## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

TREMAYNE LEWIS,

    Plaintiff,

v.

Civil Action No.  TDC-22-3074

SGT. ADELOWO,
GILBERT EKANE,
MARTINS IRIA,
ROBERT DEAN, *Warden*, and
SGT. OLUWADAMILOLA OLANIYAN,

    Defendants.

### MEMORANDUM OPINION

    Self-represented Plaintiff Tremayne Lewis, who is currently incarcerated at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging constitutional violations arising from the alleged use of excessive force against him when he was confined at Jessup Correctional Institution ("JCI") in Jessup, Maryland.  The operative pleadings are the Complaint, ECF No. 1, and the Amended Complaint, ECF No. 14, which serves only to identify by name the John Doe Defendants referenced in the original Complaint.  Defendants have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment.  Having reviewed the briefs and submitted materials, the Court finds that no hearing is necessary.  *See* D. Md. Local R. 105.6.  For the reasons set forth below, Defendants' Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

**I.    Use of Force**

In the Complaint, Lewis, who was assigned to protective custody at JCI, alleges that on February 9, 2022 at approximately 5:05 p.m., Defendant Sgt. Michael Adelowo, a JCI correctional officer, was collecting trash from each cell. A second correctional officer placed Lewis's dinner in the food slot in Lewis's cell door. When Lewis told the second officer to wait while he washed his hands, Sgt. Adelowo stopped collecting trash, grabbed Lewis's food, and slammed his food onto trays for other inmates. Lewis then told Sgt. Adelowo that if he was not going to feed Lewis, a lieutenant should be called. According to Lewis, Sgt. Adelowo then grabbed the food slot door and repeatedly slammed it on Lewis's left wrist, which was in the food slot. Lewis alleges that four other correctional officers, consisting of Defendants Warden Robert Dean, Sgt. Oluwadamilola Olaniyan, Correctional Officer II ("CO II") Gilbert Ekane, and CO II Martins Iria, were with Sgt. Adelowo at the time, but they did nothing to stop Sgt. Adelowo from slamming Lewis's wrist and hand in the food slot. In his declaration, Lewis has clarified that the officers conducting the food distribution with Sgt. Adelowo were CO II Ekane, CO II Iria, and CO II Olayele Akinroyeje. At some point, as other officers grabbed Sgt. Adelowo, he put his hand on his mace dispenser, which caused Lewis to back away from his door. Lewis then saw abrasions, blood, and redness on his hand and wrist and immediately felt pain. Lewis alleges that he was not taken to the medical unit for more than two hours after the incident.

In contrast, Defendants have submitted declarations from certain JCI correctional officers that generally state that they did not observe the food slot door slammed on Lewis's wrist and did not observe that he had any injuries. Specifically, CO II Akinroyeje states that on February 9, 2022, he was the correctional officer who handed out food trays on Lewis's housing tier. He

2

asserts that when he placed a tray in Lewis's food slot, Lewis said that he "did not want his food." Akinroyeje Decl. ¶ 2, Mot. Ex. 1, ECF No. 22-3. After CO II Akinroyeje reported to Sgt. Adelowo that Lewis refused his food, he observed Sgt. Adelowo remove Lewis's tray without closing the food slot door on Lewis's hand or arm.

In his declaration, Sgt. Adelowo asserts that after learning that Lewis refused his food tray, he removed Lewis's tray and, as he was about to close the food slot door, Lewis put his hand through it. According to Sgt. Adelowo, he then placed his hand on the "OC" spray on his waist, after which Lewis moved away from the food slot. The slot was then clear so that Sgt. Adelowo could close and secure it. At that point, Lewis yelled at him and accused him of injuring his hand. Sgt. Adelowo denies slamming Lewis's arm or hand in the food slot. Nevertheless, Sgt. Adelowo reported Lewis's accusation to Lt. Hans Njumbe, who arrived at Lewis's cell approximately three minutes later. Lewis was then removed from his cell, but Sgt. Adelowo observed no cuts, swelling, or bruising on his arms and hands. When Lewis was later removed from his cell to be taken to the medical unit, Sgt. Adelowo saw scratches on Lewis's arm which appeared to him to be self-inflicted. Sgt. Adelowo asserts that he directed Sgt. Sanusi to take photographs of Lewis's arms and hands.

According to CO II Ekane, he was on the housing tier during the distribution of dinner trays and was responsible for opening the padlocks on the cell doors so that other correctional officers could place food trays in the food slots. After dinner was over, Lewis told CO II Ekane that he injured his hand during the distribution of trays and asked to speak to the officer-in-charge and to be taken to the medical unit. CO II Ekane did not see the food slot door close on Lewis, see Lewis in distress, or notice that Lewis had an injury to his hands or arms. CO II Ekane reported Lewis's request to Sgt. Olaniyan. According to Sgt. Olaniyan, he received this report at 5:45 p.m.

3

and then immediately arranged for an escort officer to take Lewis to the medical unit, went to the housing tier, and observed the officer take Lewis out of the housing unit to go to the medical unit. Sgt. Olaniyan further states that the edges of food slots are not sharp enough to cut a person's hands or arms.

In his declaration, CO II Iria states that he was making rounds with Lt. Njumbe in Lewis's housing unit when Lewis told them that a correctional officer had closed the food slot door on his hand. According to Iria, he and Lt. Njumbe removed Lewis from his cell and noted that he was not in physical distress and that his arms, wrists, and hands had no swelling, bruising, or cuts. Lt. Njumbe instructed CO II Iria that Lewis should be escorted to the medical unit when an escort officer became available. Before Lewis was taken to the medical unit, CO II Iria observed that Lewis had shallow abrasions on his arms which appeared to be "self-inflicted." Iria Decl. ¶ 5, Mot. Ex. 4, ECF No. 22-6.

In a declaration, Lewis disputes these accounts and states that surveillance video footage for February 9, 2022 from 5:00 p.m. to 7:30 p.m. "will back and support all [his] claims." Lewis Decl. ¶ 7, Opp'n Ex. 1, ECF No. 29-1. He disputes Lt. Njumbe's assertion that he conducted a security round check and provides the housing unit logbook which lacks any entry signed by Lt. Njumbe. Lewis also disputes the claim that Lt. Njumbe and Sgt. Adelowo removed him from his cell to check on whether he had injuries. Lt. Njumbe has filed a supplemental declaration in which he maintains that he was present on Lewis's tier on February 9, 2022 and notes that "[n]ot all appearances on the tier by correctional officers are logged into the tier logbook." Njumbe Suppl. Decl. ¶¶ 2, 4, Reply Ex. 1, ECF No. 32-2.

4

**II.     Medical Treatment and Condition**

According to logs for Lewis's housing unit for February 9, 2022, Lewis was not escorted to the medical unit at 7:20 p.m. According to medical records, Lewis had a left arm abrasion with no bleeding and told the nurse that a correctional officer had slammed his hand in the food slot. He completed an "inmate statement paper" provided by Lt. William Bunn to report on the use of force. Lewis Decl. ¶ 10. Sgt. Sanusi took four photographs showing a series of scratches on Lewis's arm.

The nurse cleaned Lewis's arm with normal saline, applied bacitracin ointment, and covered the abrasion with gauze. Lewis was given a pass for wound treatment and was told to return to medical if the situation worsened.

According to Lewis, over the following eight months, Lewis was prescribed more than three different pain medications. On March 9, 2022, during a chronic care visit, Lewis complained of his injury from February and stated that it caused numbness and tingling in his fourth and fifth fingers, on and off, depending on positioning. At the time, there was a four inch-by-four inch area of redness on Lewis's left forearm close to his wrist from what appeared to be a previous skin abrasion that was healing well. The medical provider noted that the forearm injury "could be causing some inflammation and some effect on his nerve." Lewis Med. Records at 4, Opp'n Ex. C, ECF No. 29-4. Lewis was advised to keep the area warm and protected, to massage the area, and to exercise his wrist. Lewis received prescriptions for the pain medications Cymbalta and Naproxen, and a prior prescription for Tylenol Extra Strength was continued.

During a May 20, 2022 medical visit, Lewis was found to have pain and tenderness in his left hand as well as joint tenderness. At a sick call visit on July 26, 2022, Lewis continued to have pain in his left hand and mild tenderness. An x-ray of Lewis's left hand had negative results, but

5

according to Lewis, a nurse told him that his tendons were injured. Lewis was told to continue treating pain in his left hand by taking the medications baclofen and amitriptyline, previously prescribed on July 14, 2022, and to apply warm compresses to the affected area. Lewis's prescription for Cymbalta was also continued.

On November 23, 2022, during a sick call visit, Lewis reported that his left wrist and left fingers were losing feeling, that he could not exercise or put weight on his left hand, and that pain medications were not working. During another sick call visit on December 6, 2022, Lewis complained of stiffness and numbness in his left finger. Lewis reported that the symptoms began ten months ago, occurred daily, and were aggravated by movement. Lewis was continued on his current pain medication, prescribed a muscle rub, and advised to exercise his hand to improve day-to-day functioning around the affected joints. Lewis was assessed to have rheumatoid arthritis with polyneuropathy in his left hand. In his declaration, dated October 16, 2023, Lewis asserts that since February 9, 2022, the medical issues resulting from the use of force have continued and that he has been prescribed four different pain medications due to nerve damage.

Defendants have submitted a declaration by JCI Dietary Manager India White in which she states that Lewis held jobs in the Dietary Department from September 15, 2022 through November 17, 2022 and never complained of physical limitations in performing his work, even though his job required him to lift over 50 pounds and use two hands to grip objects. Defendants have also submitted declarations from Sgt. Daniel Bower and Sgt. Joshua Mallow in which they state that they observed Lewis cleaning shower stalls on November 27, 2023 with no difficulties and never received reports that Lewis, in carrying out such work, complained of pain in his hands or difficulty performing his duties. Defendants have also submitted a video showing Lewis cleaning the showers on November 28, 2023.

## III.    Investigation

On February 15, 2022, six days after the incident, Lewis filed an Administrative Remedy Procedure request ("ARP") in which he complained of the alleged use of force and requested that the video recording of the incident on "CCTV camera" be preserved. ARP at 3, Opp'n Ex. D, ECF No. 29-5. He also referenced a "3-page inmate statement" that he submitted on February 9, 2022 at 9:15 p.m. to Lt. Bunn, who was in charge of investigating the incident. *Id.* at 2-3. This statement has not been submitted to the Court.

In a declaration, Lt. Bunn has stated that he reviewed the video of the activity on Lewis's tier at the time of the incident, but because of the camera angle, the movement of the officers, and the presence of a large garbage can, Lt. Bunn "could not clearly see the feed up slot area on Lewis's cell door" and thus could not see whether Lewis's arm was extended into the slot. Bunn Decl. ¶¶ 5-6, Reply Ex. 3, ECF No. 32-4. However, Lt. Bunn asserts that he did not see anyone move in a way consistent with forcibly slamming the food slot door on Lewis's arm or fingers. Because he concluded that the video did not show any misconduct or violations against Lewis, he did not arrange for the video to be preserved.

### DISCUSSION

In their Motion, Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56. As grounds, they assert that (1) they are immune from suit in their official capacity under the Eleventh Amendment to the United States Constitution; (2) Warden Dean was not working at JCI in February 2022 and thus had no role in the events of February 9, 2022; (3) Lewis has not provided sufficient evidence to support a claim that his constitutional rights were violated based on excessive force; (4) Defendants Ekane, Iria, Dean, and Olaniyan do not have bystander liability for the use of excessive force; (5) Lewis has not provided

sufficient evidence to support a claim that his constitutional rights were violated based on a failure to provide medical care; (6) there is no *respondeat superior* liability on a § 1983 claim; and (7) Defendants are entitled to qualified immunity.  Defendants further request that the Court enter a strike against Lewis pursuant to 28 U.S.C. § 1915(g).

## I.     Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678.  The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff.  *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

When deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents.  *Sec'y of State for Def. v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007).  Defendants have attached numerous declarations and exhibits with their Motion.  Courts must treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded.  Fed. R. Civ. P. 12(d).  Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*  "Reasonable opportunity" has two requirements:  (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving

8

party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Here, the notice requirement has been satisfied by the title of Defendants' Motion. To show that a reasonable opportunity for discovery has not been provided, the nonmoving party must file an affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244-45 (4th Cir. 2002). In opposing the Motion, Lewis has attached a declaration and has substantively addressed Defendants' arguments based on the available material. He has not requested discovery. Where Lewis has not met the standard to require discovery before resolution of the Motion, the Court will construe Defendants' Motion as a motion for summary judgment for purposes of the arguments requiring consideration of the submitted declarations and exhibits.

Under Rule 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.*

**II.   Warden Dean**

Defendants assert that the claims against Warden Dean fail because he was not working at JCI at the time of the February 9, 2022 incident. Although Lewis listed Warden Dean in the Amended Complaint as one of the correctional officers present at the February 9, 2022 incident, in his declaration, he did not include Warden Dean in the list of individuals conducting the food service. In his uncontroverted declaration, Warden Dean attests that from August 2017 until March 2022, he was employed as the Security Chief at a different prison, the Maryland Correctional Institution – Jessup, and that he did not become the Warden of JCI until March 2022. Although Lewis asserts that Warden Dean was put on notice of events through Lewis's ARP relating to the incident, that ARP was submitted on February 22, 2022, before Warden Dean began working at JCI. There is no evidence that Warden Dean was actually involved in the review of the ARP. Where the record does not support a finding that Warden Dean was personally involved in the February 9, 2022 incident or its aftermath, at which point there were no actions he could have taken to prevent the alleged violations of Lewis's rights, the Motion will be granted as to the claims against Warden Dean, who will be dismissed from this action.

**III.   Excessive Force**

In seeking dismissal or summary judgment on the excessive force claim against Sgt. Adelowo, Defendants argue that the evidence does not support the conclusion that he slammed the food slot door on Lewis's hand or arm, or that Lewis suffered an injury during this incident. Defendants assert that Lewis's complaint "is a visible fiction" that the Court should reject. Mot. at 12, ECF No. 22-1.

Because Lewis is an inmate alleging excessive force occurring in a prison, his § 1983 claim arises under the Eighth Amendment, which prohibits the infliction of "cruel and unusual

10

punishments." U.S. Const. amend. VIII. This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment is violated when an inmate is subjected to "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To establish an Eighth Amendment violation, an inmate must establish both that (1) the injury or deprivation inflicted was objectively serious enough to constitute a violation; and (2) the prison official subjectively "acted with a sufficiently culpable state of mind." *Williams*, 77 F.3d at 761.

On the objective element, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010) (*per curiam*). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Id*. at 37 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). However, an Eighth Amendment violation can occur even if a correctional officer's action did not cause serious injury. *Id*. at 38 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

On the subjective element, an inmate must show that correctional officers applied force "maliciously and sadistically for the very purpose of causing harm" and thus "inflicted unnecessary and wanton pain and suffering," rather than "in a good faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). In assessing this element, a court should consider "(1) the need for the application of force; (2) the

11

relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat"; and "(4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321).

Here, Lewis has alleged in the Complaint that on February 9, 2022, Sgt. Adelowo slammed the food slot door repeatedly on his arm and wrist, causing ongoing numbness, nerve damage, and pain in his left hand. Where the allegations in the Complaint support the inference that Sgt. Adelowo took this action in anger after Lewis asked to have a lieutenant come to the scene, and there is no operationally justifiable basis to slam the food slot door multiple times, the Court finds that the allegations are sufficient to preclude dismissal pursuant to Rule 12(b)(6).

Although Sgt. Adelowo has submitted a declaration in which he denies that he slammed the food slot door on Lewis's arm and wrist, and Defendants have submitted other corroborative declarations, there remains a genuine issue of material fact on whether Sgt. Adelowo engaged in this conduct. Lewis's allegations are supported by his declaration, the ARP that he filed, medical records showing that he sustained some injury to his wrist area that warranted treatment, and additional medical records establishing that he continued to complain of pain and numbness in that area and that he received prescriptions for pain relievers and medical recommendations on further care for this injury. Although Defendants assert that the Court should accept the accounts of their witnesses over that of Lewis, such a credibility determination is not permitted at the summary judgment stage. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). Significantly, a definitive video recording of the encounter squarely refuting the plaintiff's account may provide a basis to grant summary judgment. *See Scott v. Harris,* 550 U.S. 372, 380-81 (2007). Lt. Bunn, however, has stated that the video did not provide a clear view of the food slot area, and in any event, Defendants chose to destroy it rather than retain it so that the Court could consider

12

2423b0282ffe8b8d

it. Particularly where the record is incomplete, including because Defendants have chosen not to submit Lewis's February 9, 2022 written statement with an account of the incident, the Court cannot conclude that no reasonable juror could accept Lewis's account of the events. The Motion will be denied as to the claim of excessive force asserted against Sgt. Adelowo.

## IV.   Bystander Liability

The Court agrees with Defendants that Lewis's claims against Sgt. Olaniyan, CO II Ekane, and CO II Iria relating to excessive force are claims of bystander liability. Defendants argue that these claims fail because Sgt. Olaniyan and CO II Iria were not present on the tier when the events took place, and that CO II Ekane did not have time to intervene based on Lewis's account.

A § 1983 claim may be based on a theory of "bystander liability" under which there was "an omission to act . . . coupled with a duty to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 202-03 (4th Cir. 2002). A "bystander officer" may be liable if that individual: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* at 204.

As alleged in the Complaint, the additional correctional officers who were working to provide the food trays to inmates at the time of the incident were present when Sgt. Adelowo slammed the food slot door on his arm and wrist "repeatedly," and none did anything to stop this use of force. Compl. ¶¶ 1-2, ECF No. 1. Lewis identified Sgt. Olaniyan, CO Iria, and CO Ekane as these additional officers in the Amended Complaint, after he was provided with the opportunity to review the tier logbook entries for February 9, 2022. Viewed in the light most favorable to Lewis, these allegations are sufficient state a claim of bystander liability.

Defendants assert that summary judgment is now warranted as to Sgt. Olaniyan and CO II Iria because they were not present on the tier at the time of the incident, and have submitted

13

declarations from both officers to that effect. The logbook, however, reflects that CO Iria took his post on the unit at 3:20 p.m., and that Sgt. Olaniyan was present on the unit at least at 1:15 p.m. and 6:25 p.m. Even if these entries could be read to mean that the officers were present only at those specific times and not at the time of the incident at 5:05 p.m., Lt. Njumbe notably has stated in a declaration that the logbook is not necessarily correct on the issue of which correctional officers were present on the tier at what time. CO II Ekane admits that he was present on the tier, and although he asserts that he was opening the padlocks on the food slots in cell doors and was later told by Lewis that he had injured his hand in the food slot, he does not actually deny being present with Sgt. Adelowo at the time of the alleged incident. Based on the present record, in which these Defendants' accounts conflict with Lewis's account, there remains a genuine issue of material fact on whether these Defendants were present on the tier at the time of the incident and were in a position to intervene. A definitive factual determination is particularly inappropriate where Defendants have acknowledged that they destroyed the video recording of the incident. The Motion will therefore be denied as to the bystander liability claims against Sgt. Olaniyan, CO II Iria, and CO II Ekane.

## V.  Delayed Medical Care

Defendants also seek dismissal or summary judgment on Lewis's claim that Defendants violated his Eighth Amendment rights when they did not take him to the medical unit for a two-hour period after the incident. In order to state an Eighth Amendment claim for a failure to provide medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106. Such deliberate indifference requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical

14

attention but failed to either provide it or ensure the needed care was available. *See Iko*, 535 F.3d at 241.

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* "Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.*

A delay in treatment that "exacerbated the injury or unnecessarily prolonged an inmate's pain" may be sufficient to support a finding of deliberate indifference. *Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 733-34 (4th Cir. 2015) (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). Such a claim requires a showing that the delay resulted in "some substantial harm to the patient" such as a "'marked' exacerbation of the prisoner's medical condition or 'frequent

15

complaints of severe pain.'" *Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018) (collecting cases). Lewis alleges that following the incident he asked three different correctional officers to have him taken to the medical unit, but he was not escorted there for two hours. Defendants have submitted declarations in which Sgt. Adelowo asserted that he observed no cuts, swelling, or bruising on Lewis's arms and hands, and CO II Iria and Lt. Njumbe stated that they removed Lewis from his cell and found that he was not in physical distress and did not have swelling, bruises, or cuts on his arms, wrists, or hands. In his declaration, Lewis denies that these officers checked him for injuries.

Even accepting Lewis's account that no correctional officers checked him for injuries and that his requests to be taken the medical unit were not acted upon for two hours, and even assuming that his wrist condition continues to cause pain such that it could be deemed to be an objectively serious medical condition, the Court finds that Eighth Amendment claim for a delay in medical care fails. First, Lewis has not alleged or established facts that would support the conclusion that any Defendant was subjectively aware that he had an objectively serious medical condition that required immediate medical attention. Neither the Complaint nor Lewis's declaration provide any assertion that Lewis informed or otherwise demonstrated to any correctional officer that he was in severe pain. The photos of scratches on his wrist and forearm, even assuming they depict injuries caused by Sgt. Adelowo, do not provide a basis to conclude that a correctional officer observing them would have known that he had an objectively serious medical condition. Second, there is no evidence that the delay of two hours caused any marked exacerbation of his injuries. Even after two hours, the only treatment apparently needed was bacitracin ointment and gauze, and there is no claim that such treatment was inadequate to address his condition at that time or that the failure to provide such care two hours earlier caused an infection or prevented proper healing. Later x-

16

rays showed that there was no fracture. Even if Lewis continues to have pain resulting from the incident, there is no claim or evidence that the two-hour delay caused this more serious condition. Accordingly, the Court finds that the evidence is insufficient to support an Eighth Amendment claim based on the failure to provide medical treatment during that two-hour period. The Motion will be granted as to this claim.

**VI.     Remaining Defenses**

Defendants alternatively argue that dismissal or summary judgment is warranted based on Eleventh Amendment immunity, because *respondeat superior* liability is unavailable, and based on qualified immunity. These arguments are unpersuasive.

The Eleventh Amendment bars claims for damages against state government or state personnel in their official capacities. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100-02 (1984); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 71 (1989). Lewis's claims, however, are fairly construed as against Defendants in their individual capacities. Where Warden Dean has been dismissed as a defendant, none of the claims against the other defendants are based on a theory of *respondeat superior.*

As for qualified immunity, government officials sued in their individual capacity may invoke qualified immunity. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013). "Qualified immunity protects government officials from civil damages in a § 1983 action insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999)). To overcome an asserted defense of qualified immunity from a § 1983 claim, there must be a showing that (1) the government official violated a federally protected right of the

17

plaintiff; and (2) that right was clearly established at the time of the alleged misconduct, in that a "reasonable official would understand that what he is doing violates that right." *Id.*

As reflected by the case law cited above, at the time of the alleged assault, there was clearly established law barring correctional officers from engaging in excessive force against an inmate in his cell and from failing to intervene pursuant to bystander liability. *See, e.g, Hudson*, 503 U.S. at 8-10 (excessive force); *Randall*, 302 F.3d at 202-04 (bystander liability). At this stage, there remain genuine issues of material fact on whether the remaining defendants engaged in such violations, *see supra* parts III-IV, which preclude dismissal or summary judgment at this time based on qualified immunity. *See Hupp v. Cook*, 931 F.3d 307, 323 (4th Cir. 2019) (finding that disputes of material fact precluded summary judgment based on qualified immunity). The Court will therefore deny the Motion on the issue of qualified immunity.

## VII.   Strike Against Lewis

Defendants' counsel affirmatively requests that the Court enter a strike against Lewis pursuant to 28 U.S.C. § 1915(g) based on the claim that this lawsuit was filed frivolously and maliciously, and his claim is an "absolute fiction" that "defies the laws of nature." Mot. at 11-12, 18-19. Where the Court will deny the Motion as to Lewis's core claim, this request necessarily fails. The Court notes that the entry of a strike is particularly inappropriate in a case in which there are clear factual disputes and Defendants have destroyed the relevant video evidence. More importantly, as this counsel was recently advised in another case in which a similar request was made, this type of request is legally improper because the United States Court of Appeals for the Fourth Circuit has held, in a case decided before the filing of Defendants' brief including this request, that a district court may not prospectively find that a case will count as a strike for purposes of future application of § 1915(g)'s three-strike rule. *See Pitts v. South Carolina*, 65 F.4th 141,

145 (4th Cir. 2023); *Dorsey v. Beeman*, No. BAH-21-0721, 2024 WL 3554949, at *11 (D. Md. July 23, 2024) (citing *Pitts* and informing counsel of this holding). Counsel is now advised for the second time of the correct law on this issue.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment will be GRANTED IN PART and DENIED IN PART, in that the Motion will be granted as to the claims against Warden Dean and the Eighth Amendment claim based on delayed medical care and denied as to the remaining claims. Lewis will be permitted to renew his Motion for Appointment of Counsel. A separate Order shall issue.

Date:   September 13, 2024

THEODORE D. CHUANG
United States District Judge

19